# Ermold *versus* Newkirk.

The real estate of an intestate who left *seven* children, was divided and appraised, and a house and lot, a part of the same, were taken by the eldest son, who gave recognizance, and afterwards died intestate, without issue, and without payment of the recognizance. It was afterwards agreed by others of the heirs and the husband of another heir, that the house and lot be conveyed to the husband, he to allow the consideration-money out of the share of his wife, and if more than that share, he to pay the difference. *The other lands* were sold, and the purchase-money of the house and lot was charged against the share of the wife in the distribution of the father's estate: *Held,* that the object of the proceeding not being *partition,* but the estate of the wife having been *converted,* the proceeds became the property of the husband, by his application of them, and that the title to the premises, to the extent thus paid for by the husband, vested in him; besides, the premises descended as the estate of the *son,* and not of the father, and the money due the wife was in the estate of the father. Whether *a conveyance* was made to the husband was held not to be material. The wife, who brought ejectment after the death of her husband, was held to be entitled to recover only one *sixth* part of the house and lot.

ERROR to the Common Pleas of *Berks county.*

This was an action of ejectment in the Court of Common Pleas of Berks county, by Sarah Ermold *vs.* Jacob Newkirk and John Newkirk, for a house and lot in the city of Reading.

Verdict and judgment for the plaintiff for one undivided sixth part of said lot. The plaintiff sued out this writ of error.

John Spohn, who was the owner of said lot, died intestate about the year 1820, leaving a widow and seven children, possessed of said lot and other real estate, and leaving also a small personal estate. The plaintiff, who was married to Daniel Ermold, who died before this suit was brought, was one of said children.

Proceedings were held in the Orphans' Court of said county for partition and valuation of said real estate, which was divided into three purparts. The lot in dispute was one of said purparts; and valued at $850.

On the 10th of November 1820, said purpart was accepted by Adam, the eldest son, at said valuation and was adjudged to him, and he entered into the usual recognizance.

Adam died soon after, intestate, unmarried, and without issue, not having paid said valuation-money, leaving six brothers and sisters living.

The other lands were not accepted by the heirs. An agreement, as stated hereafter, was subsequently made.

Afterwards various attempts having been made by orders of the Orphans' Court to sell the residue of the lands of John Spohn, the heirs made sale of said lands, partly to some of themselves, and partly *to a stranger.* The proceeds were brought into the administration account for distribution. The whole estate was $8040.54½; of this sum $1313.40 was of the personal estate.

Sarah Ermold was charged in the distribution of the estate with $900, the price of said house and lot, and it was thus paid by *her.*

The plaintiff contended that her husband being dead, she has a right to recover one sixth part of said lot, in her own right, *and also the two sixths of Solomon and John, her brothers.*

The defendants contended that the fee simple was in Daniel Ermold, and claimed under a sheriff's sale of the same as his property.

The article of agreement was as follows :—Memorandum of an agreement made and concluded upon the twenty-fifth of September, A. D. 1822, between Solomon Spohn, John Spohn, John Ingham, Jacob Kerlin, Philip Rush, and Daniel Ermold, heirs and representatives of John Spohn, late of the borough of Reading, Berks county, deceased.   Whereas the said heirs do hold and enjoy a certain house and lot of ground in the borough of Reading aforesaid, late in the tenure of Adam Spohn, deceased, which said property they hold in common and undivided, and whereas a contract has been entered into and agreed upon by and between them in the manner following, that is to say, that they, the said Solomon Spohn, John Spohn, John Ingham, Jacob Kerlin, and Philip Rush, do hereby covenant and agree, to and with the said Daniel Ermold, his heirs and assigns, to convey in fee simple, all their share, purpart, interest, or their undivided respective shares or interest, of and in the house and lot of ground aforesaid, and the said Daniel Ermold hereby covenants and agrees, by these presents, to allow a consideration of nine hundred dollars therefor, in the distribution of the estate of John Spohn, deceased; and in case it should be more than the share accruing to him in right of his wife, then he hereby covenants and agrees to pay unto the other heirs of the said John Spohn, deceased, such share or shares as shall appear to be payable to them.

It is also understood by and between the parties hereto, that a deed be executed on or before the first of April next ensuing, when possession of the property is to be given ; and it is understood that whatever belongs to the property is hereby sold with the same unto the said Daniel Ermold, and in case any difficulties arise as to the validity of the title, each of the heirs and parties hereto are to bear equally in the expense, (if any there be.)   In witness whereof the said parties have set their hands and seals.

Signed and sealed by Solomon Spohn, John Spohn, John Ingham, Jacob Kerlin, Philip Rush, Daniel Ermold.

GORDON, President, J., charged, *inter alia :*—This is an action of ejectment, brought by Sarah Ermold to recover possession of a house and lot in the city of Reading.

The plaintiff is the widow of Daniel Ermold, deceased, as whose property the premises were sold by the sheriff in 1843.   She contends that she is the owner of the lot in fee simple, and that her husband, who died before the commencement of this action, had

only a life estate in it. The facts, as they appear in evidence, seem to be as follows :—John Spohn died in Berks county, in 1820, intestate, leaving a widow and seven children, and seized of considerable real estate, including the lot in dispute here. On the 17th of May 1820, letters of administration were granted to his widow, Maria Spohn, and Adam Spohn, his eldest son. On the 4th of October 1820, an inquisition in the Orphans' Court, dividing the real estate into three parts, of which No. 1, consisting of the lot in question, valued at $850, was on the 10th of November adjudged to Adam Spohn, who entered into recognizance to secure the shares of the widow and other heirs.

On the 5th of January 1821, all the heirs refused to accept the remaining purparts at the valuation. Several orders of sale were taken out subsequently, and a small portion of the property sold to Solomon Spohn, leaving the principal part unsold.

On the 10th of August 1821, the administration account of Maria Spohn and Adam Spohn was confirmed in the Orphans' Court, showing a balance due the estate of $1313.46½, consisting of personal estate only.

Adam Spohn and Maria Spohn both died before April 1822, and letters of administration *de bonis non* were granted to Solomon Spohn on the 4th of April 1822.

Adam Spohn died intestate and without issue.

On the 25th of September 1822, Solomon Spohn and John Spohn, sons, John Ingham, Jacob Kerlin, and Philip Rush, sons-in-law of John Spohn, deceased, contracted with Daniel Ermold, to sell and convey to him their shares or purparts in the lots of ground in question, for which Ermold was to allow nine hundred dollars in the distribution of the estate of John Spohn, deceased, and in case it should be more than the share accruing to him in right of his wife, he was to pay the difference to the other heirs. By the agreement a deed was to be executed on or before the 1st of April 1823.

On the 1st of April 1823, all the other heirs of John Spohn, deceased, conveyed to Solomon Spohn, for the consideration of $1649.19, a tract of 95 acres of land, in Exeter township, part of the estate of John Spohn, deceased, and on the same day all the heirs conveyed 132 acres in same township to Jos. Romig, for $3966—other part of the land of said deceased. Daniel Ermold with others receipted for the consideration-money in both of these deeds.

On the 8th of August 1823, the accounts of Solomon Spohn, administrator *de bonis non* of John Spohn, deceased, were confirmed in the Orphans' Court, showing a balance due the estate of $8049.54½, including the balance in the account of Maria and Adam Spohn, making the distributive share of each heir amount to $1341.59.

It seems that after the death of Adam Spohn, Daniel Ermold went into possession of the property in dispute, and held it until it was sold as his property by the sheriff in 1843.

The defendants have examined witnesses to prove that a deed for the property mentioned in the article of agreement was executed by the other heirs of John Spohn, deceased, to Daniel Ermold, in pursuance of the agreement.

Solomon and John Spohn, Jacob Kerlin, and Philip Rush, who would have been grantors in such a deed, have been examined by the plaintiff, and testified that none of them recollect the execution of such a deed, and some of them do not believe that one was ever made; and Rush denies that he ever executed it. The existence or non-existence of such a deed is a question of fact for you.

On the facts to which the court have called your attention depends the question whether the title to the lot was in Ermold or his wife. If in the latter, she is entitled to recover in this action, notwithstanding the sale of the property by the sheriff in 1843, as the property of Daniel Ermold. The premises were bought at the sale by Charles Feather, under whom the defendants claim. It does not appear that notice of the claim of Sarah Ermold was given at the sale. Evidence has been given of Ermold's declarations before and after 1840, that the property was not his, but his wife's. You will judge whether this referred to the mode and proceedings by which the property came into his hands, and is to be regarded as an expression of opinion as to the title, or to what else it referred. If the property was not the wife's at the time of the declarations, they would not make it so. It is not alleged that Ermold at any time conveyed to her, or in trust for her.

On the death of John Spohn, his property vested in his children as his heirs, subject to the widow's rights. When Adam died, and shortly afterwards his mother, Adam's property went to his surviving brothers and sisters. Sarah Ermold was one of the sisters, and entitled to one sixth part of it. When the others contracted to sell the lot to Daniel Ermold by the article dated in September 1822, for $900, he was to pay for it by allowing so much out of his wife's share in her deceased father's estate, if so much should be coming to her; if not, he was to pay the difference. As to so much of John Spohn's estate as had been taken at the appraisement, or sold, Sarah Ermold's share was money, which could be paid to no other person than to Daniel Ermold, during his life. He could receive it and make valid acquittances for it. He could assign it for money or lands, or any valuable consideration. The land that remained was to be sold either by order of court, or by the parties in interest. In either case it would become MONEY, which Daniel Ermold would be entitled to receive, if living when the land should be sold. The land was actually sold by the parties, and Daniel Ermold receipted for the money with the other

grantors. It was in contemplation of the sale of the land, which had been refused by all the heirs, that Ermold contracted for the purchase of the lot. It was a disposal of the money coming to his wife in anticipation of its receipt from the sale of the lands, and the money was actually in hand at the time he was to get his deed.

If Ermold had taken this lot at the appraisement, and entered into recognizance to secure the other shares, and had paid the shares by applying his wife's interest in the recognizance of other heirs, or in the purchase-money of other lands sold, the law would give him five-sixths of the lot in his own right, and he would hold the remainder in the right of his wife. Did he vary his rights by purchasing the shares of the other parties in interest, and agreeing to pay for them with the moneys coming to his wife out of her father's estate? We think not. Sarah Ermold's interest in this lot *was as heir to her brother, Adam Spohn.* Her husband did not pay for it with any interest of hers in *Adam Spohn's* property. One sixth part of the lot was hers, as heir to her brother, and that was unaltered by the transaction between Ermold and the other heirs. It was not her interest in the lands of her father with which the lot was paid for. It was with the moneys arising from the sale of those lands, which moneys were the husband's, if he chose to make them so, either by receiving them, or assigning them, or buying land with them and taking the title in his own name. Where lands are devised to be sold, and the proceeds divided among legatees by the executors, and some of the legatees are married women, and all the legatees elect to take their legacies in land instead of money, it is held that the husbands, by taking deeds in their own names, indicate their intention to reduce the money into possession, in the form of land, and the land becomes their own. This is because the husband in such cases, as in the case before us, had the right to control the money and dispose of it at his pleasure. Daniel Ermold, we think, in his written contract with the other parties in interest, indicated his intention to appropriate his wife's share of the moneys arising from the sale of her father's estate to himself, in providing for a conveyance of the land bought with those moneys to himself.

Where partition is had among tenants in common, and lands assigned to each, and mutual releases are executed, and some of the tenants are femes covert, the property assigned for the shares of the wives belongs to them, and not to their husbands, whether the releases be to the wives or the husbands. In the latter case, the husbands will be regarded as trustees for their wives. This doctrine, however, is confined to cases of partition, in which the consideration for the releases is the land of the wife assigned to the releasor, and not to cases where the consideration is money of the wife, which the husband could control and dispose of at

pleasure.   No land was assigned to the parties here agreeing to convey to Ermold.   The conveyance to Solomon Spohn was simply a sale for money, and the buyer of the larger tract was a stranger. Under this agreement, Daniel Ermold became a purchaser in his own right of the shares of the other heirs of Adam Spohn in this lot, although he may have paid for them with the moneys to which his wife was entitled out of her father's estate.   In her own share, which was one sixth part, he acquired no greater interest than a life estate.   After his death the title remained in her.   Even in cases of partition, it has been held that a deed of release to the husband with a money consideration expressed in it, and containing no notice of the nature of the transaction, would be sufficient to vest in a purchaser of the land at sheriff's sale, as the land of the husband, without notice, the title and beneficial interest.   It is conceded by the defendant's counsel that the title to one sixth part of this lot is in the plaintiff, and the court think she is entitled to recover that proportion of it in this action.

Several points of law have been propounded to us by the counsel of the plaintiff, which it is our duty to answer.

1. That the plaintiff, as one of the heirs of Adam Spohn, deceased, is entitled to one undivided sixth part in the lot in controversy, and that she has a right to recover it in this action.

2. That if the jury believe that the lot in question was paid for by Daniel Ermold out of the plaintiff's portion of the proceeds of the lands to which she had a right as one of the heirs of her deceased father, that then the said Daniel Ermold would have but a life estate in the same, and at his death it would belong in fee simple to the plaintiff.

3. That the article of agreement which was given in evidence was notice to all who claim under Daniel Ermold, that this lot had been paid for with the money of the plaintiff.

4. That there is no legal proof of the execution of a deed by Solomon Spohn and wife, John Spohn and wife, John Ingham and wife, Philip Rush and wife, and Jacob Kerlin and wife, to Daniel Ermold.

5. That under the article of agreement which has been given in evidence, the plaintiff is entitled to the two undivided sixth parts in said lot, to which John Spohn and Solomon Spohn had the right, as heirs of Adam Spohn, deceased, if the jury believe that Daniel Ermold paid for the same with the lands of plaintiff.

1. To the plaintiff's first point, we answer as requested.   The plaintiff is entitled to recover one undivided sixth part of the lot in controversy.

2. We answer this point in the negative.   We are of opinion that such payment as is herein suggested would vest the title of the property in Daniel Ermold, except as to the one sixth part to which the plaintiff was entitled as heir to Adam Spohn.

[Ermold *v.* Newkirk.]

3. This point is answered in the affirmative.   The law is as herein stated.

4. In the opinion of the court, there is legal proof of the execution of the deed mentioned in this point in the testimony of the witnesses who have been sworn to the fact: whether the execution of such a deed be sufficiently established is a question of fact for the jury.

5. If the jury believe that the shares mentioned in this point were paid for by Daniel Ermold with the lands of the plaintiff, she would be entitled to these shares, unless the jury should be of opinion that a deed was executed to Daniel Ermold by the other heirs, expressing the conveyance to be for a money consideration, and affording no notice that the consideration of the conveyance was the land of the plaintiff; but if the jury believe that these shares were paid for with the proceeds of lands sold under order of the Orphans' Court, or by the heirs, to which she was entitled, then she is not entitled to the shares.  The facts of the whole case are for the jury, and the court do not wish to be understood as giving any binding directions with regard to them.   To this opinion of the court, the plaintiff by her counsel excepts, and requests that the same may be filed of record, which is accordingly done.

It was assigned for error, that the court erred in charging the jury:

1. That "under the agreement, Daniel Ermold became a purchaser in his own right of the shares of the other heirs of Adam Spohn in this lot, although he may have paid for them out of the money to which his wife was entitled out of her father's estate, and in the answers to the plaintiff's second point."

2. That "it was not her interest in the lands of her father with which the lot was paid for.   It was with the moneys arising from the sale of those lands, which moneys were the husband's, if he chose to make them so, either by receiving them, or buying lands with them and taking the title in his own name."

3. In answer to the plaintiff's fourth point, that in the opinion of the court there is legal proof of the execution of the deed mentioned in this point, in the testimony of the witnesses who have sworn to the fact.

4. In the answer to the plaintiff's fifth point, that "if the jury believe that the shares mentioned in this point were paid for by Daniel Ermold with the lands of the plaintiff, she would be entitled to those shares, unless the jury should be of opinion that a deed was executed to Daniel Ermold by the other heirs, expressing the conveyance to be for a money consideration, and affording no notice that the consideration of the conveyance was the land of the plaintiff; but, if the jury believe that these shares were paid for

with the proceeds of lands sold under order of the Orphans' Court, or by the heirs, to which she was entitled, then she is not entitled to the shares."

*Banks* and *Hoffman*, for plaintiff in error.—The wife relinquished by the agreement her right to the one sixth part of her patrimony, so far as it was necessary to pay for this lot, and thus furnished the consideration for it and the means of paying its price.

She was the meritorious person and the party to be benefited. The object was partition of the lands among the heirs as far as possible. Her husband, by being the party to the agreement, took the title to the lot in dispute as her trustee. Her land, which was the fund for payment, was her separate estate, as much so as money settled to her separate use, which, of itself, secures to her a trust estate by implication of law. Her land was conveyed in payment. Her object was not to part with its value, but to secure to herself a portion of its equivalent in the land.

When a husband takes his wife's purpart in land, and it is of less value than her share of the estate, the husband, having nothing to pay out of his own funds, acquires but a life estate : Snavely *v.* Wagner, 3 *Barr* 275; 8 *id.* 397; 5 *id.* 216–19; 7 *Watts* 217, Duncan *v.* Clark; 3 *W. & Ser.* 520, Weeks *v.* Haas; 9 *id.* 131, Kaufman *v.* Crawford.

In the case of Weeks *v.* Haas, Chief Justice GIBSON says that the law raises a resulting trust in favor of the person whose money pays for the land.

In that case, the chief justice says—"By relinquishing her right in the two-thirds of her patrimony, she furnished the consideration for it; and as she was the party to be benefited, the object being *partition, and not conversion,* the law raises a presumption that the husband took the legal title of her share as her trustee, for the same reason that it raises a resulting trust of land paid for with the money of another. With what did he pay? Certainly with his wife's land for all but an inconsiderable part of the value, and this land was as much her separate estate as money settled to her separate use, which, had it been the consideration, would have given her an indisputable trust estate by implication of law. Why then shall not the law imply such a trust estate when her land has been conveyed in payment, and the object is not to part with the value of it, but to reserve or take back an equivalent."

In the case of Kaufman *v.* Crawford, it was ruled that where husbands had procured deeds for the lands of their wives by virtue of a sale by executors where the money was to be divided among testator's daughters, and divided the lands, and executed deeds to

[Ermold *v.* Newkirk.]

each other, the husbands acquired nothing but the naked legal title, and upon their deaths the fee remained in their wives.

*Smith*, contra.—In the court below, the plaintiff in error claimed to recover, first, one-sixth; secondly, three-sixths, and the whole. The defendants admitted that she was entitled to recover her own share in the estate of her brother Adam Spohn, deceased, being one-sixth.

The case under consideration was *a sale* by the heirs of Adam Spohn, deceased, to Daniel Ermold, *and not a partition.* At the sheriff's sale, no notice was given of Sarah Ermold's title. The purchaser at sheriff's sale took the title, after seeing the deed made and executed in the usual form.

When Adam Spohn accepted of the lot in dispute, and entered into a recognizance for the payment of his brothers and sisters, the title became vested in him, and he became indebted to each of them for a seventh part of the valuation money, for which they had a lien on the house and lot. But as soon as he died, the same descended to them as his heirs, and the indebtedness and lien were extinguished by operation of law. Where the same hand is to receive and pay, the debt is paid by operation of law.

Land charged with the payment of an annuity, descending to the annuitant, the annuity is discharged: Hefferman *v.* Adams, 9 *Watts* 529; 2 *Pierre Williams* 604.

If the plaintiff in a judgment becomes the owner of the land upon which the judgment is a lien, the lien is extinct by operation of law: Koons *v.* Hartman, 7 *Watts* 20.

If partition be made between tenants in common, who are *femes covert,* and mutual releases be executed to the husbands, the husbands hold in trust for their wives: Weeks *v.* Haas, 3 *Watts & Ser.* 520. But if the release do not recite the partition, but a moneyed consideration, a purchaser from the husband, without notice, would hold the property : *Id.* Where the object is partition, *and not conversion,* the husband would be trustee for his wife. Opinion of GIBSON, C. J., 3 *W. & Ser.* 522.

In Kintzer *v.* Mitchell, 5 *Barr* 216, 219, and 8 *Barr* 81–82, notice of the wife's title was brought home to the purchaser.

Where, in partition in the Orphans' Court, the real estate cannot be divided into as many parts as there are heirs, and a husband of one of the heirs accepts in right of his wife, and enters into a recognizance to pay the valuation money, and pays the heirs their share of the valuation money with his wife's share of the valuation money of other purparts, he acquires a fee simple to all but his wife's share: Snavely *v.* Wagner, 8 *Barr* 396.

In Kaufman *v.* Crawford, 9 *W. & Ser.* 131, the title-papers disclosed the wife's interest.

[Ermold *v.* Newkirk.]

The opinion of the court was delivered June 30, by

BELL, J.—The view taken by the President of the Common Pleas, of the interest acquired by Daniel Ermold, under the undisputed facts of the case, is entirely correct.

The distinction is between partition and conversion. When the former is the object, the husband takes but a life estate in the land not actually paid for with his own proper funds; but where the estate of the wife is actually converted, the proceeds become the property of the husband by an application of them to his own purposes. Here, it is in uncontradicted proof that the lands which descended from the wife's father *were actually sold and conveyed*, and the money arising from them applied in purchase of the house and lot conveyed or to be conveyed to the husband. This fact brings the case within the distinction pointed out in Weeks *v.* Haas, 3 *W. & Ser.* 520. Besides, the property in dispute came to the plaintiff immediately from Adam her brother, and not from her father. It is therefore not within the purview of the cases cited for the plaintiff.

Under this aspect of the case, it is immaterial whether a deed was actually executed to the husband, or not, and consequently indifferent whether what the court said upon that point be well founded.                                   Judgment affirmed.